# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TYRONE FARRIS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. CIV-15-1116-R |
| ) | |
| JOE ALLBAUGH, ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION

State prisoner Tyrone Farris has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging the execution of his state court sentence. (ECF No. 1). Mr. Allbaugh has filed a Motion to Dismiss the Petition, alleging that Mr. Farris has failed to exhaust his administrative remedies and that the claims are time-barred. **(ECF No. 21)**. For the reasons set forth below, it is recommended that the Motion to Dismiss be **GRANTED**.

## I. BACKGROUND AND ISSUES PRESENTED

On August 13, 1985, Mr. Farris was convicted in Comanche County and sentenced to 99 years in prison. (ECF No. 1:1, 27). Petitioner is currently housed at Lawton Correctional Facility (LCF) and bases his lawsuit on claims that prison officials there are improperly calculating his sentence. Specifically, in Ground One, Plaintiff alleges he is entitled to: (1) 15 days of "achievement" credits per month based on his good conduct, which should be retroactively applied to the beginning of his sentence and (2) 80 days of "blood" credits per year, to be retroactively applied to the beginning

of his sentence. (ECF No. 1:7, 9, 10-16). In Ground Two, Mr. Farris contends he is entitled to: (1) "pre-" and "post-*Ekstrand*" credits and (2) "municipality" credits for working at a private prison. (ECF No. 1:7, 16-24). And in Ground Three, Petitioner alleges that Oklahoma's 1999 Truth in Sentencing Act altered his sentence, thereby depriving the Department of Corrections (DOC) of jurisdiction over him. Mr. Farris also alleges that his continued incarceration is an unconstitutional *ex post facto* violation. (ECF No. 1:7, 8, 24-31).

Respondent has filed a motion to dismiss, arguing that Mr. Farris has failed to exhaust his administrative remedies on these claims and that they are time-barred. (ECF No. 21). The Court should: (1) deny Petitioner's Truth in Sentencing claim on the merits; (2) dismiss, with prejudice, the allegations regarding entitlement to "blood" credits, "municipality" credits, and "pre-" and "post-*Ekstrand*" credits; and (3) dismiss, without prejudice, Petitioner's claim to entitlement of "achievement" credits, for failure to exhaust his administrative remedies.

## II. TRUTH IN SENTENCING ACT

Mr. Farris was convicted in 1985 and sentenced to 99 years in prison. In Ground Three, Petitioner alleges that the DOC "lost jurisdiction" over his sentences when the Oklahoma legislature passed the Oklahoma Truth in Sentencing Act. (ECF No. 1:24-30). According to Petitioner, with the passage of the Act, his sentence was classified under a new sentence matrix which rendered him eligible for parole in November 1999. (ECF No. 1:24-30). Mr. Farris argues that he was placed on an accelerated parole docket,

then removed from that docket following the passage of additional legislation. (ECF No. 1:24-30). According to Petitioner, the application of the additional legislation constituted an *ex post facto* violation as applied to him because he was subject to the sentencing scheme under the Truth in Sentencing Act and not the new legislation. (ECF No. 1:24-30). Petitioner's claim is based on a misinterpretation of state law.

As noted by the Tenth Circuit Court of Appeals, the Oklahoma legislature passed a bill entitled Oklahoma Truth in Sentencing Act to become effective on July 1, 1998. *Collins v. Workman,* 125 F. App'x. 246, 248 (10th Cir. Mar. 8, 2005). The law was subsequently amended, however, "[o]ne day before the law was to take effect, the state legislature repealed it, effective on July 1, 1999." *Id.* The Act thus "never went into effect and . . . it did not create any federal constitutional claims for those seeking habeas relief." *Id.* (citing *Teague v. Hines,* 232 F.3d 902, 2000 WL 1629445, *1–2 (10th Cir. Oct. 31, 2000); *Turner v. Champion,* 198 F.3d 259, 1999 WL 1032972, *1 (10th Cir. Nov. 15, 1999). Accordingly, the Court should conclude that Petitioner has not stated a viable constitutional claim in Ground Three and habeas relief should be denied.[1]

## III. STATUTE OF LIMITATIONS

Mr. Farris alleges that he is entitled to receive various credits retroactively applied to the beginning of his sentence. Specifically, Petitioner alleges that he is

---

[1] Although Mr. Allbaugh has moved to dismiss Ground Three on grounds of nonexhaustion and timeliness, the Court need not consider those arguments if the claim can be denied on the merits. *See Caine v. Oklahoma Dep't. of Corr.,* 2005 WL 1115246, at *1 (W.D. Okla. May 6, 2005) ("dismissal on exhaustion grounds is not required if the petition can be denied on the merits.").

3

entitled to "achievement" credits, credits for donating blood ("blood" credits), "municipality" credits, and "pre-" and "post-*Ekstrand*" credits. In Respondent's Motion to Dismiss, Mr. Allbaugh contends that these claims should be dismissed because they are time-barred. (ECF No. 21:4-7). The Court should conclude that the Respondent is correct with regards to Petitioner's claims for "blood" credits, "municipality" credits, and "pre-" and "post-*Ekstrand*" credits. But Mr. Allbaugh's argument regarding timeliness should be rejected with regard to Petitioner's claim for "achievement" credits.

### A. The AEDPA Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) sets forth a one-year period of limitations for habeas petitioners who are in state custody. The statute provides, in pertinent part:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). Because Petitioner challenges the execution of his sentence under 28 U.S.C. § 2241, the one-year limitation began to run when the factual predicate of the claim or claims presented could have been discovered though the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(D); *Cotner v. Booner*, 2002 WL 31045393, at *2 (10th Cir. Sept. 13, 2002) (analyzing timeliness of a § 2241 petition claiming incorrect calculation of credits by applying § 2244(d)(1)(D)). Applying § 2244(d)(1)(D) to the instant case, the dispositive issue involves determining when the factual basis for the claims could have been discovered through the exercise of due diligence. The undersigned will address each claim in turn.

### B. Blood Donation Credits

Mr. Farris seeks credits for donating blood and alleges that they should be applied retroactively to the beginning of his sentence. However, the policy governing credit for blood donations ceased to be effective on November 1, 1988, pursuant to ODOC policy OP–060211(II)(L)(5). (ECF No. 21:5). Under Oklahoma law, an inmate receives a record of his accumulated time served on a quarterly basis. *See* 57 O.S. § 138(I) (2001). And under DOC policy, Mr. Farris is provided a monthly report reflecting his release date. *See* https://www.ok.gov/doc/documents/op060211.pdf (ODOC policy OP–060211(VI)(L) (providing that each ODOC facility head must provide an inmate with a monthly report reflecting his or her projected release date). Assuming that at some

5

point prior to November 1, 1988, Petitioner actually donated blood, he has been provided monthly reports of his sentence calculations, as reflected in Exhibit 1 to Respondent's Motion to Dismiss. *See* ECF No. 21-1. Thus, as noted by Respondent, at the very latest, Mr. Farris would have been aware that he had not been given blood donation credits as of November 1, 1988 when the program ended.

In Response, Mr. Farris alleges that poor record keeping failed to document the blood donation credits. (ECF No. 26:19). But Mr. Farris' argument addresses the merits of the claim, not whether he had knowledge that he had been denied credits. Assuming that poor record keeping failed to reflect that credits had been given, Petitioner would have noticed the absence upon his receipt of his monthly sentence calculation. Indeed, Petitioner never disputes that he had received monthly reports reflecting earned credits. As a result, the Court assumes that Petitioner was provided reports of his sentence calculation, and as a result, Petitioner had knowledge that he was not given credit for blood donations many years before the filing date of the instant Petition. Thus, Petitioner's claim seeking sentence credits for alleged blood donations is barred by the limitation period prescribed in 28 U.S.C. § 2244(d)(1)(D), and Petitioner has not alleged that either statutory or equitable tolling principles would apply to extend the limitation period.

### C.  Municipality Credits

In Ground Two, Petitioner argues that pursuant to state law, he should be awarded "municipality" credits for the entire amount of time he has been incarcerated

at LCF. Petitioner's theory is that the corporation which owns LCF where he is incarcerated "meets the classification of a . . . municipality," because it "hous[es] state prisoners for profit and makes its corporate/industry gain in the private sector." (ECF No. 1:21). As a result, Mr. Farris contends that his work in LCF is equivalent to working for a municipality and he is entitled to "municipality" credits under 57 O.S. § 224 (1981).[2] (ECF No. 1:17, 21-23). Petitioner also contends that § 224 was amended in 1988 and the amended law presents an *ex post facto* violation as applied to him. (ECF No. 1:17, 21-23).

Respondent contends that Petitioner's claim is time-barred, arguing that the factual predicate began over 17 years ago, when Petitioner arrived at LCF on November 25, 1998. (ECF No. 21:6). In response, Mr. Farris corrects Respondent's assertion, stating that he actually began incarceration in a private prison on January 8, 1996. (ECF No. 26:21). But other than this statement, Petitioner fails to address Respondent's claim, instead only generally arguing that he had no knowledge that he was entitled to the municipality credits. *See* ECF No. 26: 21 ("petitioner did not know his entitlement"); ECF No. 26:22 ("petitioner's [sic] had no knowledge of his entitlement in that, GEO/LCF by definition was a private prison industry[.]").

---

[2] This statute provides: "[a]n inmate of a state correctional facility may be transferred to a county or municipal jail for service and maintenance work for a county or municipality. . . . Each inmate who works for a county or municipality under this section shall be provided three (3) credit days, to be taken off his sentenced time, for each day of service." 57 O.S. § 224(A) (1981); (ECF No. 1:22).

7

As discussed, Petitioner receives monthly reports of his sentence calculation. *See supra* p. 5; ECF No. 21-1. Petitioner does not allege that he did not receive the reports reflecting the status of his sentence at any time during his incarceration. Therefore, the Court should conclude that through the exercise of due diligence, Petitioner could have discovered the factual predicate of his claims regarding his entitlement to "municipality" credits and the alleged *ex post facto* violation when he began his incarceration at LCF in November of 1998. Because Petitioner waited until October 7, 2015 to file his habeas petition, he was nearly 17 years too late. *See Woody v. Dowling*, 2016 WL 3360510, at *3 (N.D. Okla. June 16, 2016) (petitioner's challenge to sentence calculation was time-barred when petitioner failed to identify the factual predicate date of his claim and did not dispute that he had received monthly accounting of his sentence computation). As Petitioner has not alleged any grounds for tolling, the Court should conclude that the claim for "municipality" credits is time-barred.

### D. Pre-and Post-*Ekstrand* Credits

Beginning November 1, 1988, Oklahoma's earned credit statue provided that inmates would earn credits to reduce their sentences under a "classification" system. Under this system, inmates earned a particular number of credits per month based on the inmate's "classification," which, in turn, was based on a variety of factors.[3] Prior to the 1988 amendment, inmates earned credits at the daily rate of 1:1, 2:1, or 3:1,

---

[3] 57 O.S. § 138 (1988); https://www.ok.gov/doc/documents/op060107.pdf

depending on the inmate's job classification.[4] In *Ekstrand v. Oklahoma,* 791 P.2d 92 (Okla. Crim. App. 1990)[5], the Oklahoma Court of Criminal Appeals held that the 1988 amendment to the earned credit statute operated in an unconstitutional *ex post facto* manner as applied to prisoners who had been sentenced prior to the amendment's effective date. *Id.* at 95. As a result, DOC policy provides that, "[a]n offender is entitled to earned credit as it existed under the law during the period beginning September 8, 1976, and ending October 31, 1988, on sentences in which the crime was committed prior to November 1, 1988" if the inmate "would earn more credit under the old earned [credit] system than under the class level system [adopted in 1988]. . . ."[6]

Mr. Farris began his sentence in August 1985, under the "pre-*Ekstrand*" earned credit system. In Ground Two, Petitioner alleges that he is entitled to credits under *both* systems. (ECF No. 1:16-24). Specifically, Petitioner seeks relief in the form of "1984 Ekstrand days at E6 (2 for 1), 62 days per month under § 138(b) of title 57 O.S." and "1988 credits under § 138(d) of 1988 statutory Class Level credits at level 4, (44 days per month) of title 57 O.S." (ECF No. 1:32).

Respondent urges dismissal, arguing that Petitioner's claim to "pre-*Ekstrand*" credits is based on his work in the prison, which he likens to work in a private prison industry. (ECF No. 21:5-6). Therefore, according to Respondent, the factual predicate

---

[4] 57 O.S. § 138 (1984); https://www.ok.gov/doc/documents/op060211.pdf
[5] *abrogated on other grounds by Waldon v. Evans,* 861 P.2d 311 (Okla. Crim. App. 1993).
[6] https://www.ok.gov/doc/documents/op060211.pdf

for Petitioner's claim would have been on May 5, 1998, when Petitioner was assigned to a private prison, and the limitations period would have expired one year later. Mr. Allbaugh argues that Petitioner's claim for "post-*Ekstrand*" credits would have begun on June 1, 2001, when Petitioner reached "Class 4 status," and any claim related thereto would have expired one year later. (ECF No. 21:6).

In response, and citing *Dulworth v. Evans*, 442 F.3d 1265, 1268 (10th Cir. 2006), Mr. Farris argues that the factual predicate did not begin until he had exhausted his administrative remedies on these claims. (ECF No. 26:15-19). Indeed, in *Dulworth*, the Tenth Circuit Court of Appeals held that in some situations, the "timely and diligent exhaustion of administrative remedies" can provide a later date for tolling the statute of limitations. *Dulworth v. Evans,* 442 F.3d 1265, 1268 (10th Cir. 2006). Where a prisoner "timely and diligently exhausts his administrative remedies," the effective date under § 2244(d)(1)(D) "is the date that the denial of [the complainant's] administrative appeal becomes final." *Id.* at 1268-69.

With regard to his claims for "pre-" and "post-*Ekstrand*" credits, Mr. Farris draws the Court's attention to two letters which he wrote to DOC Director Robert Patton. According to Petitioner, the letters and subsequent responses constitute proper "exhaustion" for purposes of tolling under *Dulworth*. Mr. Farris contends:

> That petitioner's letter writing to the Director of ODOC of his grievances on not receiving the proper calculating of statutory earned credits and that what he has been receiving at this time was an incorrect application of his entitlements which the correct application would result in a speedier release. That notice and opportunity was served when the Director had the Sentence Administrator to address the issue in the July 14, 2014 letter

> on "July 30, 2014" exhibit #1. The last letter written July 27, 2015 seeking correction of interpretation of 57 O.S. § 138 (B) "Private Prison Industry" and calculation of Ekstrand days was answered in the OP-060211 dated 09/10/2015.

(ECF No. 26:18).[7]

According to Mr. Farris, under *Dulworth*, the limitations period did not begin to run until September 10, 2015, the date under which his attempts at exhaustion through the two letters had been answered-one via a response letter dated July 30, 2014, and one via a policy change effective September 10, 2015. (ECF No. 26:18). Petitioner's argument fails.

The first letter was dated July 14, 2014, wherein Mr. Farris sought clarification of his entitlement to "pre-" and "post-*Ekstrand*" credits. (ECF No. 1-3). On July 30, 2014, Tami Grogan, a DOC administrator, responded to Mr. Farris and explained to him that his job classification would determine his credit classification and that he was not entitled to credits under both systems. (ECF No. 26-1). On July 27, 2015, Petitioner wrote a second letter, seeking clarification of his entitlement to *good conduct achievement credits*. (ECF No. 1-2). Mr. Farris contends that Director Patton "responded" to the July 27, 2015 letter by implementing changes to DOC policy which became effective on September 10, 2015. (ECF No. 26:16-18).

Petitioner attempts to argue that the "response" to the July 27, 2015 via the policy change on September 10, 2015, pertained to his entitlement to "pre-" and "post-*Ekstrand*" credits. *See* ECF No. 26:17 ("The last letter written July 27, 2015 seeking

---

[7] Mr. Farris points to no other evidence of exhaustion regarding this claim.

correction of interpretation of 57 O.S. § 138 (B) "Private Prison Industry" and calculation of Ekstrand days was answered in the OP-060211 dated 09/10/2015."). But the July 27, 2015 letter did not mention "*Ekstrand* days," only good time achievement credits. *See* ECF No. 1-2. Mr. Farris only sought clarification about his entitlement to "pre-" and "post-*Ekstrand*" credits in the July 14, 2014 letter, which was answered on July 30, 2014. *See* ECF Nos. 1-3; 26:1. Under Petitioner's theory that the letters constitute a proper means of administrative exhaustion which would toll the limitations period under *Dulworth*,[8] the limitations period would have started on July 30, 2014, the day that Mr. Farris received a response from his July 14, 2014 letter concerning *Ekstrand* credits. Thus, when Mr. Farris filed his habeas petition on October 7, 2015, he was nearly three months too late. As a result, the Court should conclude that Mr. Farris' claims to "pre-" and "post-*Ekstrand*" credits are time-barred and dismissal is appropriate.

### E. Achievement Credits

Finally, Mr. Farris alleges that he is entitled to receive 15 days of "achievement credits" per month based on his good conduct. (ECF No. 1:7, 9-16). Mr. Farris alleges first, that these credits were made possible through a prison policy which became effective July 1, 2014, and second, that a policy enacted September 10, 2015 clarified that the credits could be applied retroactively. (ECF No. 1:12-13). Respondent contends that because Petitioner has benefitted from the program since its inception on July 1,

---

[8] The Court is not making a determination on whether the letter writing constituted a proper means of administrative exhaustion.

2014, "[he] had until July 1, 2015, to bring his argument that the program applies retroactively." (ECF No. 5:7). But Mr. Farris has alleged that his claim for retroactive application did not accrue until the implementation of another policy dated September 10, 2015. (ECF No. 1:12-13). Thus, based on Mr. Farris' allegations, Petitioner had until September 10, 2016 to file a lawsuit alleging this claim. Under such reasoning, and taking Petitioner's allegations to be true, the Court should conclude that the claim for "achievement" credits, as set forth in Mr. Farris' October 7, 2015 habeas Petition, is timely.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Although Mr. Farris' claim for "achievement" credits is timely, Mr. Allbaugh argues that this claim should be dismissed because Petitioner has failed to exhaust his judicial and administrative remedies. (ECF No. 21:3-4). The Court should agree and dismiss this claim, without prejudice, for failure to exhaust his administrative remedies.[9]

### A. The Administrative Exhaustion Requirement

Although 28 U.S.C. § 2241 does not contain an explicit exhaustion requirement, the Tenth Circuit Court of Appeals has held that inmates are required to exhaust a facility's administrative remedies prior to filing a habeas petition. *See Dulworth v. Evans*, 442 F.3d 1265, 1269 (10th Cir. 2006). An inmate has satisfied the exhaustion

---

[9] The Court has already addressed the issue of judicial exhaustion in state court and decided that "Petitioner lacked state court remedies that he could exhaust and dismissal on that basis would be inappropriate." (ECF No. 14:4).

requirement when he "us[es] all steps the agency holds out." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

To administratively exhaust his claim regarding his entitlement to "achievement" credits, Mr. Farris had to satisfy LCF's 4-step internal grievance procedure, set forth in DOC Policy 090124. This procedure required Petitioner to: (1) attempt an informal resolution, (2) submit a "Request to Staff," (3) file a "Grievance," and (4) appeal to the "Administrative Review Authority."[10] (ECF No. 21-2).

### B. Petitioner Failed to Exhaust Proper Administrative Remedies

Without citing any authority, Mr. Farris contends that "the grievance process provided by DOC OP-090124 'Offender Grievance Process, . . . is not a part of grievance process." (ECF No. 1:9). In lieu of following LCF's four-step internal administrative grievance procedure, Petitioner argues that a letter he wrote to DOC Director Robert Patton on July 14, 2014, satisfied the exhaustion requirement for his claim to "achievement" credits. (ECF No. 26: 11-14).

First, Mr. Farris claims that the letter satisfied step one of the grievance procedure which required an "informal resolution." (ECF No. 26:11) ("Petitioner's letter writing served an **Initial Attempt** to resolve grieved issues.") (emphasis in original). Next, Mr. Farris argues that "the [Request to Staff] does not apply to the ODOC Director level at ODOC." (ECF No. 26:13). Finally, Mr. Farris argues that he fully exhausted his administrative remedies as evidenced by a July 30, 2014 letter from Tami

---

[10] https://www.ok.gov/doc/documents/op090124.pdf

Grogan, written in response to Mr. Farris' July 14, 2014 letter. *See* ECF No. 26-1. Petitioner theorizes that he was allowed to bypass the internal administrative grievance procedure because Mr. Patton "had power to correct any assessment or interpretations of policies or regulations," and "ODOC Director [Mr. Patton] "[is] not part of OP-090124 Offender Grievance Procedures." (ECF No. 26:11).

Petitioner's claim is belied by Tenth Circuit case law which mandates the use of a prison's internal grievance process,[11] as well as Mr. Farris' own successful use of OP-090124 to exhaust another claim for credits. On March 23, 2015, Mr. Farris filed a "Request to Staff" seeking credits for attending a computer class. (ECF No. 26-5:4). Following a denial of relief, he filed a "Grievance" of the claim one day later, utilizing the proper form. (ECF No. 26-5:3). Following another denial, Mr. Farris filed an Administrative Appeal, and was ultimately granted relief. (ECF No. 26-5:1-2). Obviously, Mr. Farris is aware of LCF's administrative grievance procedure, as he has previously utilized it to his benefit. That instance, like the current one, involved a claim that Petitioner was entitled to a calculation of additional credits. In that instance, Mr. Farris chose to utilize the internal grievance procedure, as he should have done in the instant case. Because he did not, the Court should dismiss this claim without prejudice, for failure to exhaust his administrative remedies.

---

[11] *See Dulworth v. Evans*, 442 F.3d 1265, 1269 (10th Cir. 2006) (noting that the exhaustion requirement for habeas petitions under § 2241 "extends to the exhaustion of *administrative* remedies as well.").

## V. RECOMMENDATION

It is recommended that the Court **GRANT** Respondent's Motion to Dismiss and: (1) deny Petitioner's Truth in Sentencing claim on the merits; (2) dismiss, with prejudice, the allegations regarding entitlement to "blood" credits, "municipality" credits, and "pre-" and "post-*Ekstrand*" credits; and (3) dismiss, without prejudice, Petitioner's claim to entitlement of "achievement" credits, for failure to exhaust his administrative remedies.

## VI. NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by **August 29, 2016**, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## VII. STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on August 12, 2016.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE